UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
TRUSTEES OF THE PLUMBERS LOCAL
UNION NO. 1 WELFARE FUND,  **REPORT AND**
ADDITIONAL SECURITY BENEFIT FUND,  **RECOMMENDATION**
VACATION AND HOLIDAY FUND,
TRADE EDUCATION FUND AND  CV 06-0173 (SJ) (JO)
401(k) SAVINGS PLAN, et al.,
        Plaintiffs,

   - against -

DAN YANT, INC. et al.,
        Defendants.
-----------------------------------------------------------X

**JAMES ORENSTEIN, Magistrate Judge:**

  The business manager of a union representing workers in the plumbing and pipefitting industry, together with the trustees of various benefit funds established on behalf of such workers (the "Funds"), commenced this action on January 13, 2006, against defendants Dan Yant, Inc. ("Yant") and Daniel Nyante ("Nyante"), seeking certain relief associated with the defendants' alleged failure to make required contributions to the Funds and to the Union. Docket Entry ("DE") 1. Neither Yant nor Nyante ever responded, either to the original complaint or an amended pleading filed five months later that added additional defendants who have since been dismissed. DE 14 (Amended Complaint); *see* DE 33; DE 37. On December 12, 2006, the plaintiffs moved for default judgment against Yant and Nyante. DE 30. The Clerk noted their default the following day, and the Honorable Sterling Johnson, United States District Judge, thereupon referred the matter to me for a report and recommendation. DE 34. I now make my report and, for the reasons set forth below, respectfully recommend that the court dismiss the claims against Nyante with prejudice and enter a default judgment against Yant in the amount of $108,400.63.

I.	Background

On January 17, 2005, individual defendant Nyante, acting in his official capacity as the President of corporate defendant Yant, signed an agreement that bound Yant to the terms of a collective bargaining agreement (the "CBA") with Local Union No. 1 of the United Association of Journeyman and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada ("the Union").  DE 30-5 (Affidavit of [plaintiffs' counsel] Charles R. Virginia ("Virginia Aff.")), Ex. A (copy of CBA).  Pursuant to the CBA, Yant was obliged to make contributions to the Funds in specified amounts no later than the twentieth day of the month following the month in which the work of its employees giving rise to such contributions occurred.  CBA ¶¶ 15, 19.  Yant was also required to remit a weekly Union assessment – three percent of gross wages – on the same day that it paid its Union employees (and covering the same week).  CBA ¶ 16.  Yant further agreed that if it failed to make contributions according to the agreed-upon schedule, it would be liable for certain additional amounts:  ten percent interest, liquidated damages in the amount of twenty percent of the amount owing, attorney's fees, and costs including reasonable accounting and audit expenses.  CBA ¶ 16, 23.

The plaintiffs filed the instant action on January 13, 2006, alleging that the defendants violated the CBA, the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq*. ("ERISA"), and the Labor-Management Relations Act of 1947, 29 U.S.C. § 185 ("LMRA"), by failing to make timely contributions to one or more of the Funds for work performed during the following periods:  January 2004 through August 2005, October 2005, and November 2005.  Complaint ¶¶ 14-15, 24-25, 45, 66.  In some cases the plaintiffs acknowledge that Yant made the required contributions but did so later than required, Complaint ¶¶ 66, 77, while in other cases they claim that Yant made no contributions at all.  Complaint ¶¶ 14-15, 24-25, 45.  The

Complaint further alleges that the defendants violated the CBA by failing to post and maintain a bond to guarantee contributions to the Funds. Complaint ¶ 70.

The plaintiffs served the Complaint on defendants Yant and Nyante on January 17, 2006. DE 2. They did nothing further to vindicate their rights in this case for the next two and a half months. On March 30, 2006, I ordered as follows:

> No later than April 28, 2006, one of the following events must occur: (a) the defendant must file an answer, (b) the parties must file a stipulation extending the defendant's time to answer, or (c) the plaintiff must file a motion for the entry of a notation of default. If none of the preceding events occurs by the deadline set forth above, I will deem the plaintiff to have abandoned the case and will promptly file a Report and Recommendation urging the assigned District Judge to dismiss the case for failure to prosecute.

DE 4.

Shortly before that deadline elapsed, the parties entered into a stipulation extending the defendants' time to answer to May 25, 2006. DE 5. The court approved the stipulated extension, DE 7, but the defendants again failed to submit a timely response. Over a month after the extended deadline had passed, on June 26, 2006, the plaintiffs gave Yant and Nyante yet another opportunity to litigate the case on the merits by filing an Amended Complaint that added four insurance companies as new defendants, all of whom have since been dismissed.[1] The Amended Complaint alleged the same substantive causes of action against Nyante and Yant, and requested various forms of relief including unpaid contributions for the period between January 2004 and June 2005; interest and liquidated damages based on both the unpaid contributions for the latter period and the late-paid contributions for the period from February to August of 2005; an audit to assess the amount of contributions owed from July 2005 through the date of the Amended

---

[1] One of the new defendants was dismissed pursuant to Fed. R. Civ. P. 41(a)(1)(i), DE 33, and the others were dismissed by stipulation. DE 37.

Complaint; and a $25,000 bond to guarantee contributions to the funds. *See* Amended Complaint, Prayer for Relief ¶¶ (1), (3), (20)-(22).

Once again, the plaintiffs let months go by without doing anything to vindicate their rights in this action. Finally, on December 12, 2006, almost six months after filing the Amended Complaint, the plaintiffs moved for default judgment against defendants Yant and Nyante. DE 30. The Clerk noted the defendants' default the following day. Judge Johnson subsequently referred the matter to me for a report and recommendation. DE 34.

II. Discussion

    A. Applicable Law

        1. Default

When a party is found to be in default, the court must accept as true all well-pleaded allegations in the complaint, except those pertaining to the amount of damages. *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981); *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999); Fed. R. Civ. P. 8(d). However, entry of default does not necessarily entitle the moving party to the relief it seeks. *Agamede Ltd. v. Life Energy and Technology Holdings, Inc.*, 2007 WL 201167, at *1 (January 23, 2007). In determining whether a final default judgment should granted, the court retains discretion to consider whether the facts alleged state a valid cause of action. *Id.* (citing *Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 95 (2d Cir. 1993)); *see also U.S. v. Ponte,* 246 F. Supp. 2d 74, 76 (D. Me. 2003) (Even after a defendant has defaulted, "[a] plaintiff must ... establish that on the law it is entitled to the relief it seeks, given the facts as established by the default.").

2. ERISA

ERISA is a comprehensive legislative scheme that governs the administration of employee benefit funds in the interest of protecting employees. *HMI Mech. Sys., Inc. v. McGowan*, 266 F.3d 142, 148 (2d Cir. 2001) (citing *Burgio and Campofelice, Inc. v. New York State Dep't of Labor*, 107 F.3d 1000, 1007-08 (2d Cir. 1997)). It does not require employers to provide any particular benefits; once an employer elects to do so, ERISA regulates the terms of administration. *Id.* Employers obligated to make contributions within the meaning of the statute must do so in accordance with the relevant multi-employer plan or collective bargaining agreement. *See* 29 U.S.C. § 1145; *Cement and Concrete Workers Dist. Council v. Lollo*, 35 F.3d 29, 36 (2d Cir. 1994) (duty to pay benefits must spring from a source other than ERISA) (citing *Mass. Laborers' Health & Welfare Fund v. Starrett Paving Corp.*, 845 F.2d 23, 25 (1st Cir. 1988)). The statute's overarching purpose – to protect fund beneficiaries' rights – is equitable, and thus the court's discretion in fashioning relief is considerable. *Katsaros v. Cody*, 744 F.2d 270, 281 (2d Cir. 1984); *see* 29 U.S.C. § 1001 (congressional findings that, among other things, safeguards must be provided with respect to establishment, operation, and administration of employee benefit plans to protect the interests of employees and their beneficiaries).

3. LMRA

The LMRA is intended to safeguard workers' rights to organize and to engage in collective bargaining with corporate employers. *See* 29 U.S.C. § 151. Congress recognized that inequalities in bargaining power between employers and employees resulted in poor working conditions and low wages, which in turn led to disputes between workers and employers that negatively affected commerce. *Id.* The LMRA helps to manage and mitigate the effects of those disputes by providing additional protection for "the exercise by workers of full freedom of

association [and] self-organization." *Id.* Most significantly, the LMRA allows unionized or otherwise collectively organized workers to bring suit against employers for violation of a contract between the employer and the relevant labor organization. *Id.* § 185(a).

B. <u>Liability</u>

The Clerk has properly entered the default of defendants Yant and Nyante pursuant to Fed. R. Civ. P. 55(a).[2] As explained below, the plaintiffs have stated a valid cause of action under ERISA against corporate defendant Yant, but have failed to plead a sufficient cause of action against individual defendant Nyante. I therefore respectfully recommend that the court enter judgment against Yant only, and that it dismiss the action against Nyante with prejudice.

1. <u>Yant</u>

The Amended Complaint alleges that Yant is an employer within the meaning of ERISA and is bound by the CBA – a non-ERISA source obligating parties to make contributions to the Funds according to the CBA's terms. The plaintiffs further allege that Yant failed to make required contributions to the Funds. Amended Complaint ¶¶ 7, 14, 18, 35.[3] Those allegations suffice to state a claim under ERISA, and I therefore respectfully recommend that the court enter a default judgment against Yant.

---

[2] The Clerk properly noted both defendant's default on the basis of counsel's assertion that each was served with the Amended Complaint. *See* Virginia Aff. ¶ 9 (asserting that Yant was served on June 8, 2006, and Nyante on July 7, 2006). I note, however, that prior to the submission of counsel's affidavit, the record reflected service only on Nyante. *See* DE 22. Because it is the Clerk's action in noting a default that serves as the basis for granting the instant motion, rather than the actual service of process on which that notation is presumably based, *see* Fed. R. Civ. P. 55(b)(2), I make no further inquiry on the sufficiency of service on Yant, and offer no view as to whether the latter would have a basis for seeking to set aside the default pursuant to Rule 55(c).

[3] Although Yant entered into the CBA on January 24, 2005, it agreed to be bound retroactively to July 1, 2004. The contract's term ended on June 30, 2007. *See* CBA (Cover Page).

2. <u>Nyante</u>

Not content to enforce their rights against employer Yant, the plaintiffs also seek to hold its principal Nyante personally liable to them for the violations committed by his company. They claim that because Nyante exercised authority and control over the submission of both Yant's contributions to the Funds and Yant's Union assessments (an allegation they make on the basis of unexplained information and belief), Nyante is an "employer" within the meaning of the LMRA. Amended Complaint ¶ 8. Even accepting the factual allegation as true, the plaintiffs have not shown a sufficient basis for the imposition of personal liability on Nyante.

Section 301 of the LMRA authorizes "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a). In determining whether a corporate employer's principal may be sued in his individual capacity under that law, a federal court should look to the law of the state in which it is situated "to find the rule that will best effectuate the federal policy." *Lerner v. Amalgamated Clothing & Textile Workers Union*, 938 F.2d 2, 5 (2d Cir. 1992) (quoting *Textiles Workers Union v. Lincoln Mills*, 353 U.S. 448, 457 (1957)); *see also Cement and Concrete Workers Dist. Council Welfare Fund et al. v. Lollo*, 35 F.3d 29, 35 (2d Cir. 1994). Under New York law, a corporate officer or other agent who "signs an agreement on behalf of a disclosed principal" is "not individually bound to the terms of the agreement 'unless there is clear and explicit evidence of the agent's intention to substitute or superadd his personal liability for, or to, that of his principal.'" *Id*. at 35 (quoting *Mencher v. Weiss,* 306 N.Y. 1, 4 (1953)).

A court seeking to discern such clear and explicit evidence of intent in a particular case should consider a number of factors, including the length of the contract, the proximity of any liability provision to the signature line, whether the individual officer's name appears in the

agreement itself, the nature of contract negotiations, and the officer's role in the corporation. *Id*. Applying those factors to the circumstances of this case compels the conclusion that the parties to the CBA did not intend to impose personal liability on Nyante. The CBA contains no such liability provision, Nyante's name appears nowhere in the agreement, and Yant has provided no information concerning the negotiations. Under the circumstances, the plaintiffs must be content to secure relief from the corporate entity with which they contracted, and not from its principal.

The plaintiffs' attempt to hold Nyante individually liability under ERISA is similarly unavailing.[4] "[A]n individual is not liable for corporate ERISA obligations solely by virtue of his role as an officer." *Sasso v. Cervoni*, 985 F.2d 49, 50 (2d Cir. 1993). Corporate principals have been held personally liable for a corporation's ERISA obligations in "special circumstances" – such as those in which the court can properly pierce the corporate veil and conclude the officer is the corporation's alter ego, or in which an officer has committed fraud or otherwise breached his fiduciary obligations – but no such circumstances are present here. *Id.* (citations omitted). The plaintiffs seek to hold Nyante personally liable for Yant's ERISA obligations based purely on Nyante's position and the authority he allegedly exercised over submission of contributions to the Funds. "If individual liability for ERISA obligations is to be imposed on those in such a role, Congress must supply the remedy." *Id.* at 51.

---

[4] The Amended Complaint alleges that Nyante was an employer within the meaning of the LMRA, but contains no similar allegation with respect to ERISA. Amended Complaint ¶ 8. The plaintiffs do allege, however, that Nyante is an officer of Yant and has been "acting in Yant's interest." *Id*. ERISA defines the term "employer" to include "any person acting directly as an employer, or indirectly in the interest of an employer," 29 U.S.C. § 1002(5), and section 1145, under which the plaintiffs bring the instant action, enforces an employer's obligation to make contributions to qualifying benefit plans as required by the relevant collectively bargained agreement. I therefore assume that the plaintiffs intend to assert an ERISA claim against Nyante, and do not recommend dismissal simply because they have failed to do so explicitly.

I therefore respectfully recommend that the court dismiss the claims against Nyante personally, and proceed to consider damages only as against Yant. To the extent that the court may modify or reject that recommendation, I note that my analysis of the damages issues would be the same regardless of whether judgment were to be entered against both defendants or only Yant; I also note that the plaintiffs have not made any arguments about damages that are peculiar to either defendant.

C. Damages

Having established Yant's liability, the court must still conduct an inquiry sufficient to establish damages to a "reasonable certainty." *Credit Lyonnais*, 183 F.3d at 155 (quoting *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir.1997)). Detailed affidavits and other documentary evidence can suffice in lieu of an evidentiary hearing. *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991); *Credit Lyonnais*, 183 F.3d at 155. In that regard, I note that the plaintiffs have submitted, in addition to their counsel's affidavit: a copy of the CBA; the reports of audits conducted on Yant for the periods from February through July of 2005, and from August 2005 through March 2006;[5] various documents evidencing interest, liquidated damages and lost earnings on certain late or unpaid contributions to the Funds; and invoices for attorneys fees and other litigation costs. Upon this record, I have declined to convene an evidentiary hearing and make the instant report and recommendations on the basis of the submitted documents. *See Transatlantic Marine Claims Agency*, 109 F.3d at 111; *Action S.A.*, 951 F.2d at 508.

---

[5] The plaintiffs acknowledge not only that the defendants have cooperated in the audit requested in the Amended Complaint, but also that they have satisfied the request for payment of certain outstanding contributions. Virginia Aff. ¶¶ 12, 17 & Ex. B ("Second Audit Report"). The corresponding requests for relief are therefore moot.

9

When a fiduciary successfully sues to enforce the provisions of a plan, ERISA provides that the fiduciary "shall" recover the unpaid contributions, interest on those contributions, an additional amount equal to the greater of the interest or liquidated damages up to twenty percent of the unpaid contributions, and litigation costs including reasonable attorneys' fees. 29 U.S.C. § 1132(g)(2). The plaintiffs now seek those categories of damages as well as others; specifically, they plaintiffs now seek a total award of $157,273.14, comprised of $70,209.21 in unpaid contributions to the various Funds; $11,988.47 in interest on late and unpaid contributions; $46,158.85 in liquidated damages; $2,352.74 in "lost earnings;" $6,669.14 in audit fees; $19,161.43 in attorneys fees; and $843.30 in other litigation costs. I discuss each element of their request in turn.

    1.    <u>Contributions</u>

The plaintiffs rely on the Second Audit Report to demonstrate the amount of unpaid contributions owed. Virginia Aff. ¶ 12. That document, prepared by Marshall & Moss Payroll Compliance Services, LLC, provides a summary of the contributions owed by Yant to each of the Funds for the period between August 1, 2005 and March 31, 2006, and includes a breakdown by individual employee of unreported eligible hours and the contributions do for those hours. *Id.* Ex. B. The Second Audit Report concludes that Yant is delinquent in contributions to the Local 1 Funds in the amount of $60,901.17; to the 401(k) Fund in the amount of $6,328.74; to the Plumbers and Pipefitters National Pension Fund in the amount of $2,936.72; and to the International Training Fund in the amount of $42.58. *Id.* Because the plaintiffs have established these amounts to a reasonable certainty, I respectfully recommend that the court award the sum total of those unpaid contributions to the plaintiffs: $70,209.21.

2. Interest

ERISA provides for an award of interest on the delinquent contributions that a moving party has proved, calculated using the rate in the relevant benefit plan or, if none, a statutorily prescribed rate. 29 U.S.C. § 1132(g)(2) (citing 26 U.S.C. § 6621). The agreement at issue in this case does provide for a specific rate of ten percent interest on unpaid contributions to the funds. CBA ¶ 23. Using that rate, the plaintiffs have calculated the interest due on late-paid contributions of $19,835.53, arriving at a total interest amount of $3,228.03. Virginia Aff. ¶¶ 18, 19. In doing so, however, they appear to have applied the correct rate to an inflated period. Specifically, they have calculated interest for a period of 594 days, from April 1, 2005, through November 16, 2006. *Id*. The starting date they have chosen, however, falls two months after the start of the six-month period during which Yant incurred responsibility for the contributions at issue. It is undoubtedly correct that the starting date of April 1, 2005, is correct with respect to *some* of the late-paid contributions, but, as the audit report for the period February 1, 2005 through July 31, 2005 demonstrates, the plaintiffs' methodology would result in award of at least some interest to which they are not entitled. *See* Virginia Aff., Ex. D ("First Audit Report") (evidencing contributions incurred in May, June and July of 2005). Accordingly, absent any better guidance from the plaintiffs, I recalculate the interest starting on August 20, 2005 – the date on which the last of the late-paid contributions became due. Using that date (and retaining the end date of November 16, 2006, that the plaintiffs have chosen) results in a period of 453 days. Applying an annual interest rate of ten percent to a corpus of $19,835.53 produces a total of $2,461.76, which amount I recommend the court award.

With regard to unpaid contributions owed from the period between August 1, 2005 and March 31, 2006, the plaintiffs have inexplicably departed from the CBA's interest rate. Instead,

11

they use the ten percent rate with respect to the contributions owed to some of the Funds, but assert without explanation that a twelve percent rate is appropriate with respect to other Funds. *See* Amended Complaint ¶¶ 38, 43, 48, 56; Virginia Aff. ¶¶ 13-16. I respectfully recommend calculating interest at the lower rate prescribed in the CBA – a rate that I note is in any event far above actual interest rates available in the market, and therefore provides the plaintiffs with a significant windfall.

The plaintiffs' attorney repeatedly refers to the period of "December 1, 2005 through November 30, 2005" as the appropriate period for computing interest, a period that he describes as consisting of "364 days." *See* Virginia Aff. ¶¶ 13, 14, 15. The proposed end date, coming as it does before the start date, is an obvious typographical error (as suggested by other references to an end date of "November 30, 2006" elsewhere, *see* Virginia Aff. ¶¶ 14, 15) and I instead use an end date of November 30, 2006. The plaintiffs' use of 364 days as the duration of the period for which interest should be calculated is an error of counting: the period described is exactly one full year. I therefore calculate interest for all unpaid contributions for the one-year period from December 1, 2005, through November 30, 2006. Although the plaintiffs offer no explanation for their use of those starting and ending dates, each is within the longer period for which they might arguable seek interest.

Applying an interest rate of ten percent to the $70,209.21 in unpaid contributions, and calculating the interest at that rate for the period from December 1, 2005, through November 30, 2006, produces a total amount of $7,020.92. I respectfully recommend that the court award that amount of interest for the unpaid contributions. Combining the latter proposed award with my proposal for an award of $2,461.76 in interest on the late-paid contributions, I recommend a total interest award in the amount of $9,482.68.

3. <u>Liquidated Damages</u>

In addition to delinquent contributions and interest, ERISA also provides for an award in "an amount equal to the greater of (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent [of unpaid contributions]." 29 U.S.C. § 1132(g)(2). Similarly, the CBA to which Yant is a party provides for liquidated damages in the maximum allowable amount of twenty percent of unpaid contributions. CBA ¶ 23. But for the statutory authorization of that rate, it would be reasonable to question whether this provision of the CBA exacts a penalty and is therefore unenforceable. *See Leasing Service Corp. v. Justice*, 673 F.2d 70, 73 (2d Cir. 1982) (noting courts' willingness to uphold contractual provisions fixing damages for breach when terms constitute reasonable mechanism for estimating fair compensation, but that provisions that exact penalty can not be enforced).

The plaintiffs seek, and are plainly entitled to liquidated damages with respect to the unpaid contributions. Based on a principal amount of $70,209.21, that would result in an award of $14,041.84, as that number, which represents twenty percent of the principal, is greater than the amount of damages calculated above. For some reason, however, the plaintiffs actually seek slightly less than that amount – $13,899.65 – in liquidated damages for the unpaid contributions. Specifically, while they, like I, calculate liquidated damages at the twenty percent rate for two of the Funds at issue, they use an unnecessarily low rate of ten percent rate for another Fund, and a punitively high rate of $20 per month with respect to the roughly $40 in contributions that were not paid to yet another Fund (resulting in a total of $160, in lieu of the $9.52 in liquidated damages that use of the twenty percent formula would produce). *See* Virginia Aff. ¶¶ 12-15. Rather than correct for the mistakes within the plaintiffs' calculations, I recommend awarding the

total amount of $13,899.65 in liquidated damages that they seek in connection with the unpaid contributions, as that amount is in any event less than the total that they are entitled to claim.

In addition to seeking liquidated damages on the unpaid contributions, the plaintiffs also seek such damages with respect to the late-paid contributions. Applying the twenty percent rate to the $19,835.50 in late-paid contributions produces an amount of $3,967.10. The plaintiffs seek that total, *see* Virginia Aff. ¶¶ 18-19, and I recommend that the court grant it. Combining the two categories of liquidated damages – for unpaid and late-paid contributions – I respectfully recommend that the court award the plaintiffs a total of $17,866.75 in liquidated damages.

4. Lost Earnings

The plaintiffs also seek $2,352.74 in "lost earnings." Virginia Aff., Ex. J. ERISA does not require such an award, *see* 29 U.S.C. § 1132(g), and the plaintiffs do not point to any provision of the CBA under which it might be authorized. Indeed, the plaintiffs have failed even to define that term, or to explain how lost earnings are to be calculated.[6] I therefore respectfully recommend that the court decline to include such an amount in its award.

5. Audit Fees

The plaintiffs seek the reimbursement of $6,559.14 in audit expenses, representing $3,342.50 for the audit covering the period from August 1, 2005 through March 31, 2006, and $3,216.64 for the audit covering the period from February 1, 2005 through July 31, 2005. CBA ¶ 23; Virginia Aff., Exs. I-J.[7] The CBA expressly provides for an award of such costs in the

---

[6] The printouts the plaintiffs provide from the U.S. Department of Labor (*see* Virginia Aff., Exs. C, E) do not provide information sufficient to establish or even explain the "lost earnings."

[7] Exhibit J misstates the period covered by the First Audit Report. Virginia Aff., Ex. J (noting period as "January 2004 - June 2005"). The correct period, as evidenced by the First Audit Report itself, is February 1, 2005 through July 31, 2005. *Id.* Ex. D.

event of a failure to provide contributions as required. CBA ¶ 23. Because there is a legal basis for such an award and the amount has been sufficiently documented, I recommend that the court include it in the judgment.

      6.      Attorney's Fees

The plaintiffs seek reimbursement of $19,161.73 in attorneys' fee, and have submitted sufficient billing records to support their claims about the number of hours billed to them. *See* Virginia Aff. ¶ 22 & Ex. H. As a threshold matter, I note that the relevant statutory provision makes an award of reasonable attorney's fees obligatory, not discretionary. *See* 29 U.S.C. § 1132(g)(2), 1145; *LaBarbera v. Hauserman, Inc.*, 369 F.3d 224, 226 (2d Cir. 2004).

Courts in this circuit assess such fee applications using the "lodestar method," under which a reasonable hourly rate is multiplied by a reasonable number of hours expended. *See Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d. Cir.1997); *King v. JCS Enterprises, Inc.*, 325 F. Supp.2d 162, 166 (E.D.N.Y. 2004) (citing *Green v. Torres*, 361 F.3d 96, 98 (2d Cir. 2004); *Quarantino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999)).[8] A fee applicant bears the burden of demonstrating the hours expended and the nature of the work performed, preferably through contemporaneous time records that describe with specificity the nature of the work done, the hours expended, and the dates. *New York State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1147-48 (2d Cir. 1983). Inadequate documentation is grounds for reduction of a fee award. *Hensley v. Eckhart*, 461 U.S. 424, 433 (1983); *Levy v. Powell*, 2005

---

[8] I recognize that "[t]he meaning of the term 'lodestar' has shifted over time, and its value as a metaphor has deteriorated to the point of unhelpfulness." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 493 F.3d 110, 117 (2d Cir. 2007). Thankfully, in officially abandoning that term, the Court of Appeals recognized that it is "too well entrenched" to forbid its use entirely. *Id*. at 117 n.4. I use it here merely as a convenient shorthand, and without the artificial limitations that *Arbor Hill* rejected.

WL 171992, at *6 (E.D.N.Y. Jul. 22, 2005). District courts have broad discretion, using "their experience with the case, as well as their experience with the practice of law, to assess the reasonableness" of each component of a fee award. *Fox Indus., Inc. v. Gurovich*, 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005) (quoting *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992)).

        a.       <u>Hourly Rates</u>

The plaintiffs ask for an award of fees based on the following hourly rates: $210 for the work of law firm partner Charles R. Virginia, $160 for the work of associate Yongmin Oh, and $75 for the work of paralegal assistants. The rate for attorney Virginia appears reasonable, and is at the lower end of the range of rates that has been approved for partners. *See King v. STL Consulting, LLC*, 2006 WL 3335115, at *7 (E.D.N.Y. Oct. 3, 2006) (collecting cases and finding that in this district, hourly rates range from $200 to $375 for partners, $200 to $250 for senior associates, and $100 to $150 for junior associates).

The claimed rate for attorney Oh, however, is higher than the maximum that has been approved for junior associates in other cases. *Id.* The court should therefore assure itself that there is something that justifies compensating the attorney at her requested rate. The plaintiffs and their counsel have not facilitated that task; nothing in the plaintiffs' submissions tells me anything about the extent of Ms. Oh's experience in the legal profession. While I take judicial notice of the fact that, according to records of the New York State Unified Court System that are available to the public on its Internet web site, the attorney was admitted to practice in 2004, that information does not suffice to warrant a rate above the usual maximum. *See* Attorney Directory – Attorney Details, http://iapps.courts.state.ny.us/attorney/AttorneyDetails?attorneyId=5649522 (last visited on September 23 2007). I recommend a rate of $125 per hour.

The hourly rate of $75 that the plaintiffs request for the work of a legal assistant is slightly above the usual range for this district. *See King*, 2006 WL 3335115, at *7 (finding $70 to be the customary hourly rate for paralegals in this district). Absent any explanation for the higher rate, I find no reason to deviate from the district's norm, and conclude that $70 is an appropriate hourly rate for the legal assistant hours billed here.

b. Hours Expended

The plaintiffs seek reimbursement for a total of 135.63 hours of time expended by their attorneys and paralegal assistants. Virginia Aff., Ex. H. That amount of time for a case in which the defendants defaulted is extraordinary, particularly in light of the fact that this is one of many similar cases that the plaintiffs' firm has litigated in this court, and benefitted from significant time savings as a result.

One source of the inflated hours appears to be some form of duplicative. The plaintiffs have submitted two invoices for attorneys' fees from the law firm of Barnes, Iaccarino, Virginia, Ambinder & Shepherd, PLLC, both dated December 11, 2006. Virginia Aff., Ex. H. The first invoice, submitted to "Plumbers Local 1 Funds" (the "Local 1 invoice"), charges $16,102.70 for a total of 114.11 billable hours of work performed between June 14, 2005 and December 11, 2006. *Id.* The second invoice, submitted to "Plumbers NPF" (the "NPF invoice"), charges $3,058.73 for a total of 21.52 billable hours of work performed between December 8, 2005, and December 11, 2006. *Id.* A careful review of the two invoices reveals that of the approximately 115 entries in the NPF invoice, more that 100 are *identical* to entries in the Local 1 invoice, save for the amount of time billed for each identically-described task. *Id.* Even if the duplicative entries do not reflect double-billing (and absent further evidence of such impropriety, I do not assume they do), at a minimum they suggest an inefficiency in the work being performed.

17

Moreover, many of the time entries recorded in the billing records relate to litigation against the dismissed defendants, the costs of which Yant has no reason to subsidize. I therefore conclude that a substantial portion of the time charged is "excessive, redundant or otherwise unnecessary" and should therefore not be reimbursed. *See Hensley*, 461 U.S. at 434.

One acceptable method for "trimming the fat" from a fee application, and one that consumes fewer judicial resources than a painstaking review of each time-entry, is for the court to impose an "across-the-board percentage" cut of the total amount of time claimed. *In re "Agent Orange" Products Liab. Litig.*, 818 F.2d 226, 237-38 (2d Cir. 1987). Under the circumstances of this case, I recommend an overall reduction by 75 percent of the number of hours for which the plaintiffs may demand reimbursement from Yant. Specifically, I propose reducing attorney Virginia's hours from 6.96 to 1.74, reducing attorney Oh's hours from 95.31 to 23.83, and reducing the paralegal assistants' hours from 33.63 to 8.41.[9]

          c.        Total Reimbursement

Based on the recommendations set forth above, I respectfully recommend that the court award a total of $3,932.85 in attorneys' fees, representing $365.40 for the work of attorney Virginia (1.74 hours at an hourly rate of $210), $2,978.75 for the work of attorney Oh (23.83 hours at an hourly rate of $125), and $588.70 for the work of paralegal assistants (8.41 hours at an hourly rate of $70).

---

[9] Unfortunately, the plaintiffs have not provided totals of the hours expended by each legal professional; instead, their billing records only provide hourly totals for all professionals. As a result, I have had to engage in the laborious task of calculating the relevant totals from approximately 400 separate time entries. My result was off by a total of .27 hours in the plaintiffs' favor (135.9 hours in my calculations, as opposed to the totals of 114.11 hours and 21.52 hours – totaling 135.63 hours – in the two invoices submitted). Similarly, the rounding in the calculations set forth above works uniformly in the plaintiffs' favor.

### 7. Other Litigation Costs

The plaintiffs seek reimbursement of a total of $843.30 in costs. Of that amount, $350 is attributable to the fee for filing the complaint and should be awarded. Of the remaining $493.30, some expenses are plainly attributable to litigation against the dismissed defendants, and the rest are insufficiently explained in the plaintiffs' supporting papers. I therefore recommend that only the filing fee be included in the award of litigation costs.[10]

## III. Recommendation

For the reasons set forth above, I respectfully recommend that the court enter an order awarding unpaid contributions in the amount of $70,209.21; interest in the amount of $9,482.68; liquidated damages in the amount of $17,866.75; nothing in "lost earnings;" audit fees in the amount of $6,559.14; attorneys' fees in the amount of $3,932.85, and other litigation costs in the amount of $350.00. The total award I recommend is thus $108,400.63.

---

[10] To this point I have not previously addressed the following portion of the plaintiffs' claim for damages:

> In addition, Plaintiffs seek recovery of the sum of $29,651.02, consisting of interest, liquidated damages, and legal feels, in connection with past late payment of contributions. Defendants owe a remaining balance of $25,649.87, consisting of interest in the amount of $1,241.46 and liquidated damages in the amount of $24,408.41. A spreadsheet detailing the remaining balance is annexed hereto as Exhibit G.

Virginia Aff. ¶ 21.

If the quoted paragraph (and the associated spreadsheet, the provenance of which is unspecified and which cites no source for its conclusory breakdown of amounts by month) seeks sums already covered by more specific allegations about amounts owed with respect to particular Funds, *see* Virginia Aff. ¶¶ 12-20, it is duplicative. If it seeks something else, the plaintiffs have not provided a sufficient explanation as to why the claim is appropriately awarded on the basis of Yant's default on the Amended Complaint. Either way, the paragraph is insufficient, and I respectfully recommend that the court ignore it in fashioning its judgment.

IV. <u>Objections</u>

I direct the plaintiffs to serve a copy of this Report and Recommendation on defendants Yant and Nyante by certified mail, and to file proof of service with the court no later than September 28, 2007. Any objection to this Report and Recommendation must be filed no later than October 11, 2007. Failure to file objections within this period waives the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Beverly v. Walker*, 118 F.3d 900 (2d. Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52 (2d Cir. 1996).

**SO ORDERED.**

Dated: Brooklyn, New York
September 24, 2007

/s/ James Orenstein
JAMES ORENSTEIN
U.S. Magistrate Judge